IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNIVEST CAPITAL, INC., as assignee
of TrailPods Acceptance Corporation,
a corporation,

       Plaintiff,

v.

MOONEY MOVERS, Inc., a
New Mexico Corporation,
GUILLERMO BACA, individually
& KATHERINE BACA, individually.

       Defendants,

**NOTICE OF REMOVAL TO THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

TO:    UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF NEW MEXICO

      COMES NOW the Defendants, Mooney Movers, Inc. (hereinafter "Mooney"),

Guillermo Baca (hereinafter "GB") and Katherine Baca (hereinafter "KB"), by and through their

counsel of record, CHAVEZ LAW OFFICES, PA (Gene N. Chavez) and as grounds for removal

to this Court state as follows:

      1.    On or about December 19, 2017, a Complaint was filed in the Circuit Court of the

Eleventh Judicial Circuit in Miami-Dade County, Florida.  The case was docketed as UNIVEST

CAPITAL, INC. v. MOONEY MOVERS, INC., GUILLERMO BACA & KATHERINE BACA,

Case No. 2017-027253-CA-01.  (See Exhibit A, attached)

      2.    The Plaintiff is a Florida corporation.  (See Paragraph 2 of Exhibit A).

      3.    The Complaint named Mooney Movers, Inc. as a defendant and Mooney Movers,

Inc. is a New Mexico corporation. (See Paragraph 3 of Exhibit A).

    4.    The Complaint named Guillermo Baca and Katherine Baca as individual defendants. Both Guillermo Baca and Katherine Baca are New Mexico residents. (See paragraphs 4 and 5 of Exhibit A).

    5.    Until this Notice of Removal, no responsive pleadings have been filed by the Defendants.

    6.    Complete diversity of citizenship exists between Plaintiff and Defendants.

    7.    The Complaint contains allegations that Plaintiff seeks approximately $176,740.91 in principal, plus interest. (See paragraph 20 of Exhibit A).

    8.    Although Defendants do not admit that the Plaintiff has been harmed in any act or omission of the Defendants, upon information and belief the amount in controversy exceeds $75,000.00.

    9.    The Complaint is a civil action over which this Court has jurisdiction pursuant to 20 U.S.C. 1332 and which is removable by Defendants under the provisions of 28 U.S.C. 1441 in that:

        a.    The matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and

        b.    The matter in controversy is between citizens of different states.

    10.    In accordance with D.N.M. LR-Civ. 81.1, copies of all pleadings served and filed in the Eleventh Judicial Circuit Court action identified in Paragraph 1 above will be flied immediately after this Notice.

    11.    Defendants immediately upon filing upon this Notice of Removal, will give written notice of the filing to Plaintiff as required by 28 U.S.C. Section 1446(d) and will file a

copy of this Notice of Removal with the Clerk for the Eleventh Judicial Circuit for Miami-Dade County, Florida, the Court from which this action is removed.

12.     This Notice of Removal is signed pursuant to to Fed.R.Civ.P 11.

WHEREFORE, Defendants pray that the above-entitled action be removed from the Eleventh Judicial Circuit Court to this United States District Court for the District of New Mexico.

Respectfully submitted,

CHAVEZ LAW OFFICES, PA

_/s/ Gene N. Chavez_
Gene N. Chavez
1220 5th St. NW
Albuquerque, New Mexico 87102
505-243-4363
505-217-2157-fax
gene@chavezlawoffices.com

Attorney for Defendants Mooney
Movers, Inc., Guillermo Baca &
Katherine Baca

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

UNIVEST CAPITAL, INC. as assignee of          CASE NO.: 2017-027253-CA-01
TrailPods Acceptance Corporation, a
corporation,
          Plaintiff,

vs.

MOONEY MOVERS, INC., a Corporation,
GUILLERMO BACA, individually and
KATHERINE BACA, individually,
          Defendants.                          /

## SUMMONS

To All and Singular the Sheriffs of said State:

        YOU ARE HEREBY COMMANDED to serve this summons and a copy of the Complaint in this action on Defendant:

**MOONEY MOVERS, INC.**
5811 Midway Park Blvd. NE
Albuquerque, NM 87109

By Serving:
          (A)  The President or Vice-President, or other head of the corporation and in his absence;
          (B)  The Cashier, Treasurer, Secretary of General Manager and in the absence of all of the above;
          (C)  Any Director and in the absence of all of the above;
          (D)  Any Officer or business agent residing in the state;
          (E)  And in the absence of all of the foregoing, the Registered Agent designated by the corporation:

        Each Defendant is required to serve written defenses to the Complaint or Petition on KEVIN R. JACKSON, ESQ., Plaintiff's attorney, whose address is: Law Offices of Kevin Jackson, P.A., 1136 SE 3rd Avenue, Fort Lauderdale, Florida 33316, within 20 days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

        WITNESS my hand and the Seal of said Court.          DEC 1 9 2017

As Clerk of said Court

By:          NATASHA MCKERSON
          As Deputy Clerk



IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

UNIVEST CAPITAL, INC. as assignee of     CASE NO.:
TrailPods Acceptance Corporation, a
corporation,
     Plaintiff,

vs.

MOONEY MOVERS, INC., a Corporation,
GUILLERMO BACA, individually and
KATHERINE BACA, individually,
_____ Defendants.              /

## COMPLAINT

Plaintiff, UNIVEST CAPITAL, INC. as assignee of TrailPods Acceptance Corporation, a

corporation (hereinafter known as "UNIVEST"), by and through its undersigned attorneys,

hereby sues the Defendants, MOONEY MOVERS, INC., a Corporation (hereinafter referred to

as "MOONEY MOVERS"). GUILLERMO BACA, individually (hereinafter referred to as

"GUILLERMO") and KATHERINE BACA, individually (hereinafter referred to as

"KATHERINE") and in support thereof states:

## AS TO ALL COUNTS

1.     This is an action for damages which are greater than $15,000.00 in amount.

2.     Plaintiff, UNIVEST, is a Corporation authorized to do business within the

state of Florida.

3.     Defendant, MOONEY MOVERS, is a corporation that conducted business in

in Miami-Dade County, Florida during all relevant times herein.

4.     Defendant, GUILLERMO, is now a resident of New Mexico but during all times

1

relevant hereto and through MOONEY MOVERS, conducted business in Miami-Dade County, Florida.

     5.     Defendant, KATHERINE, is a resident of New Mexico but during all times relevant hereto and through MOONEY MOVERS, conducted business in Miami-Dade County, Florida.

     6.     The Contracts (Lease and Guaranties) which are the subject of this matter were entered into by the parties in Miami-Dade County, Florida and said Lease sets forth that Florida law governs the terms of the Lease and the parties' conduct.

     7.     The payments that were to be made by the Defendants under the terms of the Contracts which are the subject of this matter were to be made in Miami-Dade County, Florida.

     8.     The breach of the Contracts which are the subject of this matter occurred in Miami-Dade County, Florida.

     9.     Venue for this matter is proper in Miami-Dade County, Florida.

     10.     UNIVEST is the correct and proper entity to enforce the terms of the Lease and Guaranties which are the subject of this matter.

     11.     On or about November 12, 2014, the Defendant, MOONEY MOVERS, did enter into an Equipment Lease Agreement (hereinafter referred to as "Lease") with Trailpods Acceptance Corporation for the use of certain property described therein; a true and correct copy of said Lease is attached hereto as Composite Exhibit "1".

     12.     On or about November 12, 2014, the Lease was assigned from Trailpods Acceptance Corporation to UNIVEST CAPITAL, INC.; a copy of the assignment letter is attached hereto as Exhibit "2".

2

13.     As part consideration for the Lease, GUILLERMO, did sign and give his personal

guaranty of the obligations of MOONEY MOVERS under the Lease; a true and correct copy of the

guaranty is attached hereto as Exhibit "3".

14.     Additionally, as part consideration for the Lease, KATHERINE, did sign and give

her personal guaranty of the obligations of MOONEY MOVERS under the Lease; a true and correct

copy of the guaranty is attached hereto as Composite Exhibit "4".

15.     UNIVEST is the true owner and holder of the Lease and Guaranties and the party

entitled to enforce same.

**COUNT I**
**DAMAGES AGAINST MOONEY MOVERS FOR BREACH OF LEASE**

16.     This is an action for damages which is greater than $15,000.00 in amount.

17.     Plaintiff repeats and realleges the allegations contained within Paragraphs 1 through

15 as though set forth fully herein.

18.     Plaintiff has fully complied with all of the provisions of the Lease attached hereto as

Composite Exhibit "1" and all conditions precedent to the institution of this action have been

performed or have occurred.

19.     MOONEY MOVERS has defaulted under the terms of the Lease attached as

Composite Exhibit "1" by having failed to make the payment due Plaintiff on or about July 1, 2017,

and by having failed to make any further payments thereafter.

20.     There is now due, owing and unpaid to Plaintiff from the Defendant, MOONEY

MOVERS, the principal amount of $176,740.91 due for unpaid Lease payments (101 months at

$1,749.91 per month - the accelerated balance due under the Lease), late fees of $787.50, Property

3

tax due under the Lease totaling $1,527.90, insurance due under the Lease at $546.20, interest from the date of default of July 1, 2017 at 18%, court costs and a reasonable attorney's fee as more specifically set forth in of the Lease.

21.    The Lease provides for payment of attorney fees and court costs in the enforcement of collection thereunder and Plaintiff has obligated itself to pay its undersigned attorneys a reasonable fee for their services rendered herein.

WHEREFORE, Plaintiff, UNIVEST, hereby demands judgment against the Defendant, MOONEY MOVERS, for past due lease payments of $1,217.94, future payments due under the lease of $5,271.87, past due sales tax of $73.08, sales tax of $423.20, late fees of $182.70, insurance fees of $100.56, 2008 property tax of $158.67, residual value of equipment of $1,781.40, interest from the date of default of July 10, 2008, court costs and a reasonable attorney's fee as more specifically set forth in of the Lease.

**COUNT II**
**PERSONAL GUARANTY - DAMAGES AGAINST GUILLERMO**

22.    This is an action for damages which is greater than $15,000.00 in amount.

23.    Plaintiff repeats and realleges the allegations contained within Paragraphs 1 through 15 as though set forth fully herein.

24.    On or about November 14, 2014, the Defendant, GUILLERMO, executed and delivered to Plaintiff his unconditional written Guaranty of the obligations and liabilities of Defendant, MOONEY MOVERS, a copy of the Guaranty being attached hereto as Exhibit "3".

25.    Thereafter, and in reliance upon said Guaranty, Plaintiff did lease certain equipment to Defendant, MOONEY MOVERS, as can be seen from Composite Exhibit "1" attached hereto, for which there is now due, owing and unpaid to Plaintiff the following sums: the principal amount of $176,740.91 due for unpaid Lease payments (101 months at $1,749.91 per month - the accelerated

4

balance due under the Lease), late fees of $787.50, Property tax due under the Lease totaling $1,527.90, insurance due under the Lease at $546.20, interest from the date of default of July 1, 2017 at 18%, court costs and a reasonable attorney's fee as more specifically set forth in of the Lease.

26.     Although, demand has been made upon the Defendant named herein, he has failed and refused to make payments to Plaintiff.

27.     Said Guaranty provides for payment of attorney fees and court costs in the enforcement of collection thereunder and Plaintiff has obligated itself to pay its undersigned attorneys a reasonable fee for their services rendered herein.

WHEREFORE, Plaintiff, UNIVEST, hereby demands judgment against the Defendant, GUILLERMO, past due lease payments of $176,740.91 due for unpaid Lease payments (101 months at $1,749.91 per month - the accelerated balance due under the Lease), late fees of $787.50, Property tax due under the Lease totaling $1,527.90, insurance due under the Lease at $546.20, interest from the date of default of July 1, 2017 at 18%, court costs and a reasonable attorney's fee as more specifically set forth in of the Lease.

**COUNT III**
**PERSONAL GUARANTY - DAMAGES AGAINST KATHERINE**

28.     This is an action for damages which is greater than $15,000.00 in amount.

29.     Plaintiff repeats and realleges the allegations contained within Paragraphs 1 through 15 as though set forth fully herein.

30.     On or about November 14, 2014, the Defendant, KATHERINE, executed and delivered to Plaintiff her unconditional written Guaranty of the obligations and liabilities of Defendant, MOONEY MOVERS, a copy of the Guaranty being attached to the Complaint as Exhibit "4".

5

31.    Thereafter, and in reliance upon said Guaranty, Plaintiff did lease certain equipment to Defendant, MOONEY MOVERS, as can be seen from Composite Exhibit "1" attached hereto, for which there is now due, owing and unpaid to Plaintiff the following sums:  the principal amount of $176,740.91 due for unpaid Lease payments (101 months at $1,749.91 per month - the accelerated balance due under the Lease), late fees of $787.50, Property tax due under the Lease totaling $1,527.90, insurance due under the Lease at $546.20, interest from the date of default of July 1, 2017 at 18%, court costs and a reasonable attorney's fee as more specifically set forth in of the Lease.

32.    Although, demand has been made upon the Defendant named herein, she has failed and refused to make payments to Plaintiff.

33.    Said Guaranty provides for payment of attorney fees and court costs in the enforcement of collection thereunder and Plaintiff has obligated itself to pay its undersigned attorneys a reasonable fee for their services rendered herein.

WHEREFORE, Plaintiff, UNIVEST, hereby demands judgment against the Defendant, KATHERINE, the principal amount of $176,740.91 due for unpaid Lease payments (101 months at $1,749.91 per month - the accelerated balance due under the Lease), late fees of $787.50, Property tax due under the Lease totaling $1,527.90, insurance due under the Lease at $546.20, interest from the date of default of July 1, 2017 at 18%, court costs and a reasonable attorney's fee as more specifically set forth in of the Lease.

LAW OFFICES OF KEVIN JACKSON, P.A.
Attorneys for Plaintiff
1136 SE 3RD Avenue
Fort Lauderdale, Florida 33316
(954) 779-2272 - phone
(954) 463-2301 - fax
eService: filings@krjlaw.com

By: _____
        Kevin R. Jackson, Esquire

"EXHIBIT A"





MOONEY MOVERS INC.

Composite Exhibit "1"

## EQUIPMENT LEASE AGREEMENT

This Equipment Lease Agreement ("Lease") is made as of this ___th day of November 2014 ("Effective Date") by and between **TRAILPODS ACCEPTANCE CORPORATION**, a Florida corporation ("Leasing Company") and **MOONEY MOVERS INC.** a State of New Mexico Company. ("Lessee").

### BACKGROUND

A. Leasing Company owns, or will purchase, the equipment set forth in Schedule I attached hereto (the "Equipment").

B. Lessee is a dealer of mobile storage containers known as COWs® under that certain Container on Wheels Dealership Agreement for Existing Self Storage and Moving Businesses dated October 10, 2014 ("Dealer Agreement") between COWs USA, LLC, a Florida limited liability company ("COWs USA") and Lessee, as Dealer.

C. In connection with Lessee's business under the Dealer Agreement, Lessee desires to rent from Leasing Company, and Leasing Company desires to rent to Lessee, the Equipment.

IN CONSIDERATION of the foregoing and the mutual covenants and agreements set forth below, Leasing Company and Lessee agree as follows:

1) **Lease.** Leasing Company leases to Lessee and Lessee leases from Leasing Company, subject to the terms and conditions of this Lease, the Equipment set forth in Schedule I attached hereto and incorporated herein.

2) **Term.** The term of this Lease shall commence on the Effective Date and shall end on the one-hundred and thirty — second month (11 year) anniversary of the Rent Commencement Date (defined below), unless the term of this Lease is otherwise extended or terminated as provided herein.

3) **Base Rent.** Subject to the terms of this Section 3, commencing on the Rent Commencement Date (which is defined below) and on the first day of each calendar month thereafter, Lessee shall pay to Leasing Company rent in advance in equal monthly installments equal to the "Base Rent" set forth in Schedule I, plus applicable sales and/or use tax. For purposes of this Lease:

i) "Initial Delivery Date" means the date the first item of Equipment is delivered to Lessee.

ii) "Rent Commencement Date" means for all items of Equipment, the first day immediately following the Initial Delivery Date. In the event less than all of the Equipment is delivered to Lessee on the Initial Delivery Date, Lessee shall pay the Total Equipment is delivered.

iii) Notwithstanding anything in this Lease to the contrary, in the event the Initial Delivery Date does not fall on the first day of a calendar month, Lessee shall pay on the Initial Delivery Date a prorated portion of the Base Rent for the period from the Initial Delivery Date to the Rent Commencement Date.

iv) All Base Rent, and applicable sales and/or use taxes, shall be paid to Leasing Company in lawful money of the United States of America at the Leasing Company's address for Notices under Section 23 below or at such other place as Leasing Company may from time to time designate in writing. Checks or money orders shall be made payable to Leasing Company and shall be paid without prior notice, demand, deduction or offset except as expressly provided in this Lease.

4) **Security Deposit and Additional Security Deposit.** To secure Lessee's obligations to Leasing Company, Lessee will pay the "Security Deposit" and "Additional Security Deposit" (if required) set forth in Schedule I to this Lease. Leasing Company may commingle the Security Deposit and "Additional Security Deposit" with its other assets and funds without liability to Lessee. If at any time the Lessee shall be in default in any of the provisions of this Lease, the Leasing Company shall have the right to apply the Security Deposit and Additional Security Deposit, in whole or in part, as necessary to cure Lessee's default or to reimburse Leasing Company's damages caused by such default. If the Security Deposit and/or Additional Security Deposit is use by Leasing Company, Lessee shall pay to restore the Equipment and/or Additional Security Deposit to its full amount within five (5) days of Leasing Company's written demand therefore. If any part of the Security Deposit and/or Additional Security Deposit is remaining at the end of the term of the Lease and Lessee has complied with all of its obligations, Leasing Company will return the remainder to Lessee.

5) **Equipment.**

a) Order: Lessee represents and warrants to Leasing Company that Equipment described in Schedule I attached hereto sets forth Lessee's selection of Equipment. Lessee understands and acknowledges that (a) Leasing Company is relying on Lessee's selection in ordering the Equipment from the manufacturers and/or suppliers; (b) once purchased, the Equipment will be owned by Leasing Company; and (c) Leasing Company is not the manufacturer of the Equipment and is not responsible for the quality, shipping, handling and delivery of the Equipment. Lessee will not have, and waives, any claim against Leasing Company if the manufacturer or supplier of the Equipment delays in delivery or installation. Lessee understands that Leasing Company has some common ownership with COWs USA, the licensor under the Dealer Agreement. Lessee waives any and all claims that Leasing Company is responsible for the manufacturing, quality, shipping, handling and delivery of the Equipment. In addition, Lessee waives any and all claims that Leasing Company is responsible for or liable for any actions or omissions of COWs USA and agrees



**TRAILPODS** ACCEPTANCE CORPORATION  786.242.6800

Page 1

that any actions, omissions or nonperformance of COWs USA is not a defense to Lessee's liability under this Lease.

b) AS-IS. LEASING COMPANY HAS NOT MADE AND DOES NOT MAKE, NOR SHALL LEASING COMPANY BE DEEMED TO HAVE MADE, AND LEASING COMPANY EXPRESSLY DISCLAIMS ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS OR APPLICABLE LAWS, QUALITY OF MATERIALS OR WORKMANSHIP, SUITABILITY, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGMENT. LESSEE LEASES AND ACCEPTS THE EQUIPMENT "AS IS", "WHERE IS" AND "WITH ALL FAULTS". IT BEING AGREED THAT ALL SUCH RISKS, AS BETWEEN LEASING COMPANY AND LESSEE, ARE TO BE BORNE BY LESSEE. Without limiting the foregoing, Leasing Company shall have no responsibility or liability to Lessee or any other person with respect to any of the following regardless of any negligence of Leasing Company: (i) any liability, loss or damage to persons (including death) or property caused or alleged to have been caused directly or indirectly by the Equipment, any inadequacy, defect (latent or otherwise) or deficiency therein; (ii) the use, misuse, operation or performance of the Equipment or any risks related thereto; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, nondelivery, installation, operation, servicing, maintenance, repair, or replacement of any of the Equipment. LESSEE AGREES TO SETTLE ALL CLAIMS DIRECTLY WITH THE SUPPLIER AND/OR MANUFACTURER AND WILL NOT ASSERT ANY SUCH CLAIMS AGAINST LEASING COMPANY, LEASING COMPANY'S LIABILITY HEREUNDER IN ANY EVENT SHALL BE LIMITED TO ITS INTEREST IN THE EQUIPMENT. Lessee's obligation to pay rent under this Lease shall survive without offset or deduction for any matter whatsoever including any defects in form, delivery, function or utility of the Equipment.

c) Delivery. In the event Lessee does not receive delivery of all Equipment within ninety (90) days of the Initial Delivery Date ("Outside Delivery Date"), Leasing Company may, but is not obligated to, upon ten (10) days prior written notice, revise Schedule I to include only the Equipment delivered and this Lease shall continue and remain in full force and effect with respect to the Equipment so delivered. Leasing Company may, without any liability to Lessee, terminate orders for the Equipment not delivered by the Outside Delivery Date.

6) **Ownership.** Lessee agrees that at all times the Equipment shall remain the property of the Leasing Company and that Lessee shall mark, or allow Leasing Company to mark, at Lessee's expense, all of the Equipment with decals, markings or metal plates providing that Leasing Company is the owner of such Equipment

and such other information that Leasing Company may require. **Lessee shall have no right, title or interest in the Equipment** other than the right to use the Equipment during the period of time Lessee remains in good standing under this Lease.

7) **Location**. Lessee will cause all of the Equipment to remain at the Location Premises (as defined below) throughout the term of this Lease, except when the Equipment is traveling to or from, or located at, a customer's premises while under a rental agreement in the form required under the Dealer Agreement. Lessee must have Leasing Company's prior written approval prior to allowing the Equipment to be transported to another dealer (i.e., a one-way move) or to a Satellite Storage Facility (as defined in the Dealer Agreement. For purposes of this Agreement, "Location Premises" means the Premises (as defined in the Dealer Agreement) or such other location at, or on, which Lessee is permitted under the Dealer Agreement to store the Equipment during the times it is not in transit or rented to a customer. Notwithstanding the foregoing, in no event shall Lessee permit the Equipment to leave, permanently or temporarily the state in which the Premises are located, without Leasing Company's prior written consent.

8) **Use, Maintenance and Alteration**. No Equipment shall be used other than for the purpose which it is intended. Use of the Equipment shall comport with all applicable law, the requirements of any insurer insuring the Equipment and the terms of the Dealer Agreement. Lessee, at its own expense, shall maintain the Equipment so that (a) it remains in as good a condition as existed upon its delivery, ordinary wear and tear excepted and (b) the warranty of the Equipment suppliers and manufacturers remains in full force and effect. Lessee shall not alter the Equipment in any manner. If repairs are necessary, replacement parts shall meet the specifications required by the Equipment's manufacturer and, in the absence of such specifications, with replacement parts of equal or better quality than the replaced parts.

9) **Liens and Taxes**. Lessee shall keep the Equipment free and clear of all liens and encumbrances. Any lien or encumbrance attaching to the Equipment shall immediately be discharged, satisfied or otherwise removed by Lessee. Lessee shall pay all taxes, fees and assessments levied on or with respect to the Equipment when due. Leasing Company may, but is not obligated to, perform Lessee's obligations under this paragraph if Lessee fails to do so. If Leasing Company does so perform for Lessee, Lessee shall reimburse all costs and expenses incurred by Leasing Company upon demand. Lessee waives releases and forgoes any and all claims and defenses against such reimbursement based upon the improper or negligent compromise or satisfaction of any claim against Lessee or the Equipment or upon the failure to minimize or mitigate the expenses incurred in performing Lessee's obligations. Lessee agrees to indemnify and hold Leasing Company harmless against any and all claims, causes, actions and damages arising from or related to Lessee's failure to perform in



TRAILPODS ACCEPTANCE CORPORATION   786.242.6800

AB /KB   11/4/14

Page 2

accordance with the terms of this paragraph. This paragraph shall survive termination and expiration of this Lease.

10) **Representations and Warranties**. Lessee represents and warrants to Leasing Company that (a) Lessee owns the Location Premises in fee simple (or if the Location Premises are subject to a mortgage or ground lease, at the request of Leasing Company, the mortgagee or ground Leasing Company have subordinated or waived any lien or encumbrance that they may have in or to the Equipment), (b) as of the date hereof, no mortgage or lien given by or resulting from the action of Lessee encumbers the Equipment or Lessee's interests therein; (d) the Equipment is to be used only for commercial purposes described in the Dealer Agreement; and (e) if Lessee is, or at any time becomes, a corporation, partnership, limited liability company or other legal entity (a "Business Entity"), Lessee (and the individuals signing on behalf of Lessee) represent, warrant and agree that: (i) Lessee is duly organized and validly existing under the laws of the state of its organization, and is duly qualified to transact business in the state in which the Location Premises and COWs Dealership (as defined in the Dealer Agreement) are located; (ii) the individuals signing on behalf of Lessee have the authority to execute and deliver this Agreement and to perform the obligations hereunder; (iii) true and complete copies of the articles of incorporation, partnership agreement, bylaws, subscription agreements, buy-sell agreements, voting trust agreements and all other documents relating to ownership, organization, capitalization, management and control of Lessee have been delivered to the Leasing Company and all amendments thereto shall be promptly delivered to Leasing Company; (iv) the articles of incorporation, partnership agreement or other organizational documents recite that the issuance, transfer or pledge of any direct or indirect legal or beneficial ownership interest is restricted by the terms of this Agreement; and (v) all certificates representing direct or indirect legal or beneficial ownership interests now or hereafter issued must bear a legend in conformity with applicable law reciting or referring to such restrictions.

11) **General Indemnity**. Lessee agrees to indemnify, defend and hold harmless, the Leasing Company and its directors, officers, shareholders, successors, assigns, employees and representatives (collectively, the "Leasing Company Parties") against any and all claims, actions, causes, judgments and damages arising from, related to, with respect to or in connection with this Lease, Lessee's performance under the Lease and all matters with respect to the Equipment including, but not limited to, its manufacture, design, transport and delivery, use, maintenance, repair and operation. This paragraph shall survive termination and expiration of this Lease.

12) **Inspection and Property Access**. Lessee agrees that Leasing Company may access the Location Premises and inspect and inventory the Equipment whenever Leasing Company desires and with or without notice. Leasing Company may access the Location Premises at

any time in the event Leasing Company determines, in its sole discretion, that action is necessary to protect the Equipment from being damaged.

13) **Insurance**. From and after the date of delivery of an item of Equipment, Lessee shall obtain and maintain on such item, at Lessee's own expense, all-risk casualty and liability insurance in such amounts, against such risks (including theft and vandalism), in such form and with such insurers as shall be satisfactory to Leasing Company; provided, however, that the amount of property damage insurance at any particular time shall not be less than the full replacement value of the Equipment and shall not require co-insurance. Each casualty insurance policy will name Leasing Company as loss payee and each liability insurance policy shall name Leasing Company as an additional insured, and each shall contain clauses (a) requiring the insurer to give Leasing Company at least 30 days prior written notice of any alteration in the terms of such policy or of the cancellation or nonrenewal thereof, and (b) providing that, as to the interest of Leasing Company thereunder, such policy shall not be suspended, invalidated or in any manner prejudiced by any action or inaction of Lessee or any other party (other than Leasing Company). At Leasing Company's option, Lessee shall furnish to Leasing Company a certificate of insurance or other evidence satisfactory to Leasing Company that such insurance coverage is in effect; provided, however, that Leasing Company shall be under no duty either to ascertain the existence of or to examine such insurance or to advise Lessee if such insurance fails to comply with the requirements of this section. Lessee hereby appoints Leasing Company as Lessee's attorney-in-fact to claim receipt for, receive payment of, and execute and endorse all documents, checks or drafts for loss or damage under any of said insurance policies, and Lessee hereby assigns to Leasing Company all proceeds of any such policy paid on account of any damage to or loss of the Equipment or any part thereof.

14) **Casualty Loss**. Lessee shall not be released from its obligations under this Lease in the event of the casualty loss, theft, vandalism, damage, disrepair, undue wear or destruction of the Equipment (each a "Casualty Loss"). Each Item of Equipment suffering a Casualty Loss shall immediately be repaired or replaced. Each repaired or replaced item shall be deemed an item of Equipment under this Lease. Lessee bears the entire risk of Casualty Loss.

15) **Assignments**. Lessee will not, directly or indirectly, (a) sell, assign, convey, mortgage, pledge, hypothecate, grant a security interest in, or otherwise transfer, encumber or suffer a lien upon or against any of the Equipment, (b) other than as contemplated under the Dealer Agreement, sublet or grant licensee to use the Equipment or any part thereof (collectively, "Transfer") or (c) assign, in whole or in part, any of its rights under this Lease. For purposes of this Lease, a "Transfer" shall be deemed to include for Lessee's that are not individuals, without limitation, any change in the ownership or control of Lessee or any of its members, shareholders or partners,



**TRAILPODS** ACCEPTANCE CORPORATION  786.242.6800

*JB JKB 11/4/14*

whether by sale, operation of law, merger, consolidation or otherwise. Lessee further agrees that (a) Lessee will not change Lessee's name without notifying Leasing Company of such change in writing at least 30 days prior to the effect date of such change, and (b) no change shall be made in Lessee's organizational documents which would affect Lessee's ability to perform any of its obligations under this Lease or any other document executed in connection herewith without, in each case, obtaining Leasing Company's prior written consent. Leasing Company may assign it rights and obligations hereunder without the consent of Lessee.

16) **Default.**   The occurrence of any of the following shall constitute a default by Lessee under this Lease:

(a) Lessee shall fail to make any payment of Base Rent or any other payment required under this Lease within five (5) days of its due date; or

(b) Other than the defaults set forth in this Section 16, any other default under this Lease which is not cured within ten (10) days after written notice from Leasing Company to Lessee; or

(c) If Lessee or any guarantor of Lessee's obligations hereunder shall make an assignment for the benefit of creditors or shall generally not be paying its debts as they become due; or

(d) If Lessee or any guarantor of Lessee's obligations hereunder is adjudged insolvent or becomes a debtor in any voluntary or involuntary bankruptcy or other proceeding under any existing or future law of any jurisdiction, domestic or foreign, seeking relief with respect to it or its debts; provided that in the case of any such proceeding commenced against Lessee or any such guarantor a default shall not be deemed to have occurred if such proceeding is dismissed or discharged as to Lessee or such guarantor within 60 days from the filing thereof; or

(e) If any default occurs under any guaranty executed in connection herewith and such default continues after applicable notice and/or the expiration of applicable grace or cure periods, if any, or if any guarantor repudiates or terminates such guaranty; or

(f) If any guarantor of this Agreement shall become deceased, unless Leasing Company is provided with a substitute guarantor or alternative collateral satisfactory to Leasing Company within 90 days; or

(g) Any judgment for monetary damages is entered against Lessee or any guarantor which, in Leasing Company's sole judgment, has a material, adverse effect on the ability of Lessee or any such guarantor to perform its obligations to Leasing Company under this Lease or any documents executed in connection herewith or is not covered to Leasing Company's satisfaction by collectible insurance proceeds; or

(h) If the insurance Lessee is required to maintain hereunder is not kept in full force and effect, or Lessee has not delivered evidence of the renewal thereof at least 10 days prior to the expiration as required above; or

(i) Any Transfer shall be made without Leasing Company's prior written consent; or

(j) If Lessee is in default under the Dealer Agreement;

(k) The Dealer Agreement is terminated; or

(l) If the Equipment shall be removed or relocated from the Location Premises other than in connection with the business of Lessee under the Dealer Agreement; or

(m) Lessee shall default in performance of any other obligation or agreement with Leasing Company for money borrowed or equipment leased, which continues following applicable notice and the expiration of applicable grace or cure periods, if any; or

(n) Lessee's default under any other agreement between Leasing Company and Lessee; or

(o) Lessee's sale, transfer or conveyance of the Location Premises without Leasing Company's prior written consent, which shall be reasonably given if this Lease is not in default and the new owner of the Location Premises assumes all of Lessee's obligations hereunder and under the Dealer Agreement.

17) **Remedies.**

(a) Upon the occurrence of a default, Leasing Company may, at its option, without notice or demand of any kind, and in addition to any and all other rights available to Leasing Company under applicable law, exercise any one or more of the following remedies, as Leasing Company, in its sole discretion, shall elect to: (i) terminate this Lease or, at Leasing Company's option, (but any such termination shall not relieve Lessee of liability for accrued rent, accelerated rent or any other damages for such breach); or (ii) with or without terminating this Lease, declare rent for the full term of this Lease  immediately due and payable; (iii) proceed by appropriate court action, either at law or in equity, to enforce performance by Lessee of its obligations under this Lease or to recover damages for the breach thereof; (iv) exercise any and all rights and remedies available to a Leasing Company under the UCC; (v) require Lessee, at Lessee's sole expense, to promptly assemble and return the Equipment or any portion thereof to the possession of Leasing Company at such place or places as Leasing Company shall designate and in the condition required to be surrendered upon termination hereof, or Leasing Company, at its option, may enter upon the premises where the Equipment is located and take immediate possession of and remove the same peaceably, if possible, or by summary proceedings or otherwise, all without liability accruing to Leasing Company for or by reason of such entry or taking of possession or removal,



TRAILPODS ACCEPTANCE CORPORATION   786.242.6800

Page 4

whether for the restoration of damaged property caused by such action or otherwise; (vi) sell, for cash or upon credit, all or any part of each item at public or private sale(s) and at such time and locations, as Leasing Company, in its sole discretion may determine, or otherwise dispose of, hold, use, operate, lease to others or keep idle all or any part of each item as Leasing Company, in its sole discretion, may determine, in each case free and clear of any rights, title or interest of Lessee therein; or (vii) set-off, hold and apply against rent and all other amounts due to Leasing Company hereunder any security deposits, cash, credits or accounts of any nature whatsoever, now or hereafter held or maintained by or on behalf of Lessee with Leasing Company, regardless of whether such account is general or special, individual or joint.

(b) Lessee shall be liable for all costs, charges and expenses, including reasonable fees and expenses of legal counsel, incurred by Leasing Company by reason of the occurrence of any default by Lessee or the exercise of Leasing Company's remedies with respect thereto (including performance on Lessee's behalf) or the collection of any amount owing by Lessee hereunder. All amounts recovered by Leasing Company may be applied by Leasing Company to the payment of Lessee's obligations hereunder in such priority and proportions as Leasing Company, in its sole discretion shall deem proper.

(c) If Leasing Company shall have sold or otherwise disposed of any of the Equipment, Lessee shall remain liable for any deficiency between the net proceeds of such sale(s) or other disposition(s) (after deducting all costs,, charges and expenses, including without limitation reasonable fees and expenses of legal counsel, incurred by Leasing Company in connection therewith and otherwise as a result of Lessee's default or Leasing Company's exercise of its remedies with respect thereto) and the amount which, absent the default, would have been payable hereunder. If any item, in Leasing Company's sole judgment, shall require repair or maintenance, Leasing Company, at Lessee's costs, shall have the right, but shall not be obligated, to perform such repair or maintenance for the purpose of putting such items in condition suitable for sale or other disposition as Leasing Company deems appropriate, but Leasing Company shall have the right to sell or otherwise dispose of such item without such repair or maintenance.

(d) Upon the occurrence of any default, Leasing Company also may, but without any obligation to do so and without notice to or demand on Lessee, cure such default in such manner and to such extent as Leasing Company may deem necessary to protect the Equipment and Leasing Company's interest therein. Leasing Company is authorized for such purposes to enter upon the property at which the Equipment is located and to appear in, defend or bring any action or proceeding to protect its interest in the Equipment.

(e) Leasing Company shall have the right to conduct sales on Lessee's premises, without any charge therefor, and all

sales of the Equipment (or any part thereof) may be adjourned from time to time in accordance with applicable law. Leasing Company may purchase all or any part of the Equipment at any public sale or, if permitted by law, any private sale and, in lieu of actual payment of such purchase price, Leasing Company may set-off the amount of such price against Lessee's unpaid obligation hereunder. If any sale is of less than all of the Equipment, the security interest created by this Lease shall continue as a lien and security interest on the remaining portion of the Equipment, unimpaired and without loss of priority.

(f) No remedy referred to herein is intended to be exclusive, but each, except to the extent otherwise expressly provided herein, shall be cumulative and in addition to any other remedy referred to above or otherwise available to Leasing Company at law or in equity.

18) **Late Charges and Interest**.

(a) Rent not paid in full within 5 days of its due date (without regard to any other grace period) shall be subject to a late charge in an amount equal to 5% of said delinquent payment. Such late charge shall be due and payable upon Leasing Company's demand therefor.

(b) Any late fee or other amount due hereunder (including without limitation amount incurred by Leasing Company in the exercise of Leasing Company's remedies hereunder which is not paid in full within 20 days of the original due date (without extension for any applicable grace period), shall bear interest from its original due date until paid in full at a rate ("Interest Rate") which is 1.5% per month (or the maximum amount permitted by law to be collected if such rate exceeds the maximum legal rate). Interest at the Interest Rate shall accrue on any judgment obtained by Leasing Company in connection with this Lease.

(c) Notwithstanding any provision hereof to the contrary, at no time shall Lessee be obligated or required to pay interest (or make any payment which is deemed by a court of law to be interest) at a rate which could subject Leasing Company to either civil or criminal liability as a result of being in excess of the maximum interest rate which Lessee is permitted by applicable law to contract or agree to pay. If Lessee is at any time required or obligated hereunder to pay interest (or make any payment which is deemed by a court of law to be interest) at a rate in excess of such maximum rate, such rate or charge shall be deemed immediately reduced to such maximum rate and thereafter computed at such maximum rate. All prior interest payments or charges in excess of such maximum rate shall be deemed to have been payments of rent and not on account of the interest due hereunder.

19) **Leasing Company Financing; Attornment**. Lessee understands that Leasing Company may finance (each, a "Loan") the purchase of the Equipment from a third party lender (each, a "Lender") and that Leasing Company may assign Leasing Company's interests under this Lease, including Leasing Company's right to rent, to Lender as



TRAILPODS ACCEPTANCE CORPORATION 786.242.6800

Page 5

security for Leasing Company's obligation to repay the Loan. Upon written notice from Lender that payments under this Lease are to be made to Lender, Lessee shall thereafter make all payments due hereunder to Lender, as directed in such written notice, and provide Leasing Company with copies thereof to evidence such payment. In addition, should Lender (or any party taking through Lender) become, by its assignment of this Lease from Leasing Company, the Leasing Company hereunder, Lessee agrees to attorn to Lender (or any party taking through Lender). In the event that Lender (or any party taking through Lender) becomes the Leasing Company hereunder, Lessee agrees that Lender (or such party taking through Lender) shall not be liable, and Lessee hereby waives any claims against Lender, for Leasing Company's breach of or failure to perform under this Lease.

### 20) Financing Lease; Security Interest and Financing Statements; Further Assurances.

a) Financing Lease. The parties agree that this Lease is a finance lease within the meaning of Article 2A of the Uniform Commercial Code as in effect in any applicable jurisdiction ("UCC"). If and to the extent that this Lease is determined by a court not to constitute a true lease transaction for purposes of the UCC, Lessee hereby grants to Leasing Company, to secure the payment and performance of all Lessee's obligations hereunder including without limitation, rent, accrued late fees, interest and amounts which become due to Leasing Company in accordance with the exercise of Leasing Company's remedies, a present and continuing security interest in the Equipment, and all service contracts and all warranty claims, insurance claims and general intangibles relating to the foregoing and all proceeds (cash or non-cash) thereof.

b) Security Interest. In addition to the foregoing and without limiting the scope thereof, to secure Lessee's performance hereunder, including the payment of Base Rent, Lessee pledges as collateral, and grants a security interest, to Leasing Company in all of Lessee's rights, title and interest to and under all agreements (including customer rental agreements) relating to the use and rental of the Equipment together with all proceeds and fees payable and paid with respect thereto (collectively, the "Collateral").

c) Financing Statements. Lessee concurrently with the execution and delivery of this Lease and thereafter, from time to time, will execute financing statements and such other instruments as Leasing Company deems necessary to perfect and continue Leasing Company's security interest in the Equipment and the Collateral. Unless prohibited by applicable law, Lessee hereby authorizes Leasing Company to execute and file any financing statements or continuation thereof on Lessee's behalf, and the parties further agree that any carbon, photographic, or other reproduction of this Lease shall be sufficient as a financing statement and may be filed in any appropriate office in lieu thereof.

d) Further Assurances. Lessee further agrees to take such other actions as Leasing Company reasonably may request to carry out the intent of this Lease or to establish and protect the rights and remedies created or intended to be created in favor of Leasing Company hereunder or to protect the value of the Equipment and of Leasing Company's security interest in the Equipment, including, without limitation, obtaining landlord waivers, mortgagee waivers and other assurances from third parties regarding Leasing Company's access to, and right to sell, the Equipment and right to realize the practical benefits of Leasing Company's remedies hereunder. Lessee will pay all fees and expenses incident to the preparation, execution, acknowledgement, filing and/or recording of any of the foregoing, except where prohibited by law so to do.

21) **Lessee Estoppel Certificates; Leasing Company Assignment.** Upon Leasing Company's request from time to time, Lessee agrees to execute and deliver to Leasing Company (or to such party as Leasing Company may designate from time to time) a tenant estoppel certificate in form and substance satisfactory to Leasing Company (or such other party designated by Leasing Company). Lessee's failure to execute and deliver such estoppel certificate within 10 business days of Leasing Company's written request therefore shall be deemed, at Leasing Company's option, to be Lessee's conclusive statement of the facts set forth in such estoppel certificate. Leasing Company, and each successor to Leasing Company's interest, has the right, in its sole discretion, to transfer, sell, pledge, assign or otherwise encumber or dispose of its interest in this Lease. Upon notification of any such transfer, Lessee agrees to make all payments required under this Lease to the designated transferee without asserting any defense, setoff, recoupment, claim or counterclaim which Lessee may have against Leasing Company.

22) **Return of Equipment.** Upon expiration or termination of this Lease, Lessee, at its sole expense, will immediately return the Equipment to Leasing Company, unencumbered by any claims or rights of others to such location or such carrier (packed for shipping), as Leasing Company shall designate. The Equipment shall be returned in the same condition as it was received, normal wear and tear excepted. If, in the opinion of Leasing Company, any item of Equipment fails to meet the standards set forth above, Lessee agrees to pay on demand all costs and expenses incurred by Leasing Company in repairing and restoring the Equipment so as to meet the foregoing standards. If Lessee fails to return any item of Equipment or, if any Equipment returned fails to meet the requirements of this Section, then, at Leasing Company's option, all of Lessee's obligations under this Lease shall continue with respect to such Equipment, and rent shall be due, until such Equipment has been returned in the condition required hereunder. Lessee has NO right to purchase the Equipment.

23) **Notices.** All notices and other communications under this Lease are to be in writing, addressed to the respective



TRAILPODS ACCEPTANCE CORPORATION  786.242.6800

party to the address as set forth below such party's signature hereto, and shall be deemed to have been duly given (a) upon delivery, if delivered in person with receipt acknowledged by the recipient thereof, (b) one business day after having been timely deposited for overnight delivery, fee prepaid, with any reputable overnight courier service, or (c) three business days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested. Each party may establish a new address from time to time by written notice to the other given in accordance with this section; provided, however, that no such change of address will be effective until written notice thereof is actually received by the party to whom such change of address is sent. Notice to additional parties designated by a party entitled to notice are for convenience only and are not required to notice to a party to be effective in accordance with this section.

24) **Governing Law**. This Lease shall be governed by and construed pursuant to the laws of Florida, without regard to its conflict of laws rules.

25) **Descriptive Headings**. Titles and headings used in this Lease are for information purposes only.

26) **Binding Effect**. This Lease is binding upon and inures to the benefit of the Leasing Company, its successors and assigns and to the permitted heirs, personal representatives, successors and assigns of Lessee.

27) **Attorneys' Fees**. If any litigation or other adversarial proceeding results regarding this Lease, the prevailing party shall be entitled to attorneys' fees and court costs.

28) **Waiver**. No delay by Leasing Company party in exercising any right, power, or remedy hereunder and no failure of Leasing Company to exercise any of its rights hereunder in case of any breach by Lessee shall impair any such right or power or be construed as a waiver of any breach by Leasing Company or any acquiescence therein or as a violation or waiver of any of the terms or provisions of this Lease.

29) **Leasing Company's Liability; Certain Duties**. As used in this Lease, the term "Leasing Company" means only the current owner of the Equipment. Each Leasing Company is obligated to perform the obligations of Leasing Company under this Lease only during the time such Leasing Company owns such interest or title. Any Leasing Company who transfers its title to the Equipment and assigns this Lease is relieved of all liability with respect to the obligations of Leasing Company under this Lease to be performed on or after the date of transfer. However, each Leasing Company shall deliver to its transferee all funds that Lessee previously paid (including

the Security Deposit) if such funds have not yet been applied under the terms of this Lease. Lessee shall be given written notice of any failure by Leasing Company to perform any of its obligations under this Lease. Leasing Company shall not be in default under this Lease unless Leasing Company fails to cure such non-performance within thirty (30) days after receipt of Lessee's notice. However, if such non-performance reasonably requires more than thirty (30) days to cure, Leasing Company shall not be in default if such cure is commenced within such thirty (30) day period and thereafter diligently pursued to completion. Notwithstanding any term or provision herein to the contrary, the liability of Leasing Company for the performance of its duties and obligations under this Lease is limited to Leasing Company's interest in the Equipment, and neither the Leasing Company nor its partners, members, managers, shareholders, officers or other principals shall have any personal liability under this Lease. In no event shall Leasing Company be liable for, and Lessee waives all claims for, direct or indirect consequential, special and punitive damages.

30) **Entire Agreement; Amendment**. This Lease (including the Schedule) set forth the entire agreement between the parties, and supersedes any and all prior agreements and oral or written communications or understandings, of the parties regarding the subject matter hereof and thereof. This Lease may not be modified except in a writing signed by authorized representatives of Leasing Company.

31) **Personal Guaranties**. If Lessee is a Business Entity, Lessee represents and warrants that its owners are as set forth in the Schedule. In addition, if any owner of Lessee is itself a Business Entity, Lessee represents and warrants that the ultimate owners who are individuals are listed in the Schedule. Leasing Company may require, as a condition to entering into this Lease, that each direct or indirect individual owner of Lessee give Leasing Company personal guaranty in the form of Exhibit A attached hereto.

32) **Waiver of Jury Trial**. BY EXECUTION OF THIS LEASE, LESSEE AGREES THAT NEITHER LESSEE NOR ANY ASSIGNEE, SUCCESSOR, HEIR, OR LEGAL REPRESENTATIVE OF LESSEE SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS LEASE. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE PARTIES WITH LEASING COMPANY, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. LEASING COMPANY HAS IN NO WAY AGREED WITH OR REPRESENTED TO LESSEE, ANY GUARANTOR, OR ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Page 7



TRAILPODS ACCEPTANCE CORPORATION 786.242.6800

XB KB 11/4/14

14596

**SCHEDULE I**

The "Equipment" leased under that certain Equipment Lease Agreement between **TrailPods Acceptance Corporation** a State of Florida company, and **MOONEY MOVERS INC.** a State of New Mexico corporation:

15 COWs, with the following Serial Numbers: (Serial Numbers will be assigned when equipment is delivered and will be added to this lease by addendum)

| 16' COWs – "Container on Wheels" | 8' COWs – "Container on Wheels" |
|---|---|
| Serial Numbers to be added | Serial Numbers to be added |

Other Equipment: <u>Start-Up Fees</u> [none, if left blank]

| | | | | | | |
|---|---|---|---|---|---|---|
| Base Rent per  16' COW: | <u>15</u> units | X | $<u>89.00</u> | per month per unit  = | $<u>1,335.00</u> | per month |
| Base Rent per  8' COW: | __ units | X | $<u>89.00</u> | per month per unit  = | $_____ | per month |
| Base Rent per  16' Dolly: | __ units | X | $____ | per month per unit  = | $_____ | per month |
| Base Rent per  8' Dolly: | __ units | X | $____ | per month per unit  = | $_____ | per month |
| Base Rent per  8 yrd Dumpster:- | - - __ units | X - | $____ | per month per unit  = - | $_ _ _ _ | per month. |
| Base Rent per  6 yrd Dumpster: | __ units | X | $____ | per month per unit  = | $_____ | per month |

Base Rent for Other Equipment      <u>1</u> units   X     $<u>414.91</u> per month per unit  =   $ <u>414.91</u>  per month
(after 72 payments and provided there is no default, under this lease, the payment amount of $414.91, relating to the "Base Rent of Other Equipment" will no longer be payable. At such time, the amount due and payable under the remaining term of this lease will be $1,335.00 per month, plus applicable sales tax.)

Total Base Rent:      $ <u>1,749.91</u> per month,
plus applicable sales, use, property, tangible, intangible or any other taxes that might be imposed by a taxing authority.

Security Deposit:      $____.00
Additional Security Deposit:      $_____ (none required if left blank)

Additional Deposit will be handled in the following way, provided Lessee is not in default of any of the terms of this Agreement,

1) One-Third of the Additional Security Deposit will be returned to the Lessee at the end of Year 3 with 0.5% interest earned
2) One-Third of the Additional Security Deposit will be returned to the Lessee at the end of Year 4 with 0.5% interest earned
3) The last third of the Additional Security Deposit will be returned to the Lessee at the end of Year 5 with 0.5% interest earned

Lessee Owners:       1:  <u>Guillermo W Baca</u>   <u>50</u> %
                     2:  <u>Katherine Baca</u>   <u>50</u> %
                     3:_____   ____ %

Page 9



**TRAILPODS** ACCEPTANCE CORPORATION   786.242.6800

AB /KB 11/4/14

EXECUTED by Lessee and Leasing Company as of the Effective Date.          14596

| Witnesses (as to Lessee): | LESSEE: |
|---|---|
| Signature: _Cindy Hoover_ <br> Print Name: _Cindy Hoover_ <br><br> Signature: _Patty Mondragon_ <br> Print Name: _Patty Mondragon_ | MOONEY MOVERS INC. <br> Signature: _____ <br> Name: __Guillermo W Baca__ <br> Title: _President_ <br> Address: _5811 Midway PK Blvd NE_ <br> _Albuquerque NM 87109_ <br><br> Signature: _Kath Baca_ <br> Name: __Katherine Baca__ <br> Title: _Vice-President_ <br> Address: _5811 Midway PK Blvd NE_ <br> _Albuquerque NM 87109_ |
| Witnesses (as to Leasing Company): | LEASING COMPANY: |
| Signature: _____ <br> Print Name: _____ <br><br> Signature: _____ <br> Print Name: _____ | COWs Leasing <br> Signature: _____ <br> Name: __WILLIAM CLARK__ <br> Title: __SVP__ <br> Address: _13055 SW 238th Street_ <br> _Homestead, FL 33032_ |

 LEASE AGREEMENT

786.242.6800

_WB_  _KB 11/4/14_

November 12, 2014

To the main COW Herder;

Please be advised that we have sold and assigned your TrailPods Acceptance Corporation, Inc. equipment finance agreement to Univest Capital, Inc. ("UCI"). UCI now owns all rights and interests under the agreement. Your current November payment has been collected by TrailPods Acceptance Corporation as usual and your first payment due to UCI will be on December 1, 2014.

UCI will contact you to verify your monthly payment amount, your billing address and that you have your COWs. Nothing changes for you, other than who is the recipient of your monthly payment.

For your reference the contact information for UCI is as follows:

Univest Capital, Inc.
3331 Street Road, Ste 325
PO Box 1329
866-604-8160

We appreciate the opportunity to service your leasing needs,

Sincerely



Mike Frank
Trailpods Acceptance Corporation

**TRAILPODS** ACCEPTANCE CORPORATION 786.242.6800

13055 SW 238th Street

Homestead, Florida 33032

Exhibit "2".

**EXHIBIT A**
**Personal Guaranty 1**

THIS GUARANTY AGREEMENT, made and executed by Guillermo W Baca, a resident of the State of New Mexico, (individually and collectively, hereinafter called the "Guarantor");

WITNESSETH:

WHEREAS, **MOONEY MOVERS INC.** a State of New Mexico corporation ("Lessee"), and TrailPods Acceptance Corporation, a Florida corporation (the "Leasing Company") have entered into a certain Equipment Lease Agreement, dated as of November ___, 2014 (the "Lease"); and,

WHEREAS, in order to induce the Leasing Company to enter into the Lease, the undersigned Guarantor has agreed to guaranty the payment of all rents and charges, and the performance of all of Lessee's obligations, under the Lease. Guarantor has also agreed to assign bank letter of credit for the benefit of the Leasing Company.

NOW, THEREFORE, in consideration of the execution and delivery of the Lease by the Leasing Company, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Guarantor hereby agrees as follows:

1. The undersigned, jointly and severally, guarantee to the Leasing Company the due and punctual payment of all rent payable under the Lease, and each and every installment thereof, as well as the full and prompt and complete performance by the Lessee of each and all of the covenants, conditions and provisions in the Lease contained on the part of the Lessee therein to be kept, observed and performed, for the full term of the Lease and any extension thereof, with no less force and effect than if the undersigned were named as the Lessee in the Lease, and the undersigned, jointly and severally, will forthwith on demand pay all amounts at any time in arrears, and will make good any and all defaults occurring under the Lease.

2. This Guaranty shall be absolute, and continuing, and the Leasing Company shall not be required to take any proceeding against the Lessee, or give any notice to the Guarantor, before the Leasing Company has the right to demand payment or performance by the Guarantor upon default by the Lessee. This Guaranty and the liability of the Guarantor hereunder shall in no way be impaired or affected by any assignment which may be made of the Lease. The obligations hereunder are joint and several and are independent of the obligations of Lessee, and a separate action may be brought and prosecuted against any or all Guarantors whether action is brought against Lessee or any other Guarantor or whether Lessee is joined in any such action or actions, or whether Leasing Company has proceeded against or exhausted security pledged as collateral for any obligations under the Lease.

3. Guarantor authorizes Leasing Company, without notice or demand and without affecting Guarantor's liability hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the Lease or any part thereon; (b) take and hold security for the payment of this Guaranty or the obligations guaranteed, and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Leasing Company, in its discretion, may determine; and (d) release or substitute any of the endorsers, sureties or guarantors.

4. Guarantor waives any right to require Leasing Company to (a) proceed against Lessee to recover the rent or any other amounts due under the Lease; (b) proceed against or exhaust any security held from Lessee; or (c) pursue any other remedy in Leasing Company's power whatsoever. Until all rent and all other amounts due under the Lease to Leasing Company shall have been paid in full, Guarantor shall have no right of subrogation, and waives any right to enforce any remedy which Leasing Company now has or may hereafter have against Lessee, and waives any benefit of, and any right to participate in any security now or hereafter held by Leasing Company. Guarantor waives all presentment, demands for performance, notices of non-performance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guaranty.

5. No action or proceeding brought or institute under this Guaranty against the undersigned, and no recovery had in pursuance thereof, shall be a bar or defense to any further action or proceeding which may be brought under this Guaranty by reason of any other default or defaults of Lessee.

6. The liability of the Guarantor shall not be deemed to be waived, released, discharged, impaired or affected by reason of the release or discharge of the Lessee including, but not limited to, any release or discharge pursuant to any reorganization, readjustment, insolvency, receivership or bankruptcy proceedings.

7. There shall be no modification of the provisions of this Guaranty unless in writing and signed by the Guarantor and the Leasing Company.

Page 10

**TRAILPODS** ACCEPTANCE CORPORATION  786.242.6800

Exhibit "3"

11/4/14



8. All of the terms, agreements and conditions of this Guaranty shall be joint and several, and shall extend to and be binding upon the Guarantor, their heirs, executors, administrators, and assigns, and shall inure to the benefit of the Leasing Company, its successors and assigns.  Leasing Company may, without notice, assign this Guaranty in whole or in part.

9. If either party hereto brings any action to enforce rights under this Guaranty, whether judicial, administrative or otherwise, the prevailing party in that action shall be entitled to recover from the losing party all fees and court costs incurred, including reasonable attorney's fees for port judgment proceedings, whether such costs and fees are incurred out of court, at trial, on appeal, or in any bankruptcy proceeding.

10. If any term of provision of this Guaranty, or the application thereof to any person or circumstance, shall, to any extend, be invalid or unenforceable, the remainder of the Guaranty, or the application of such term or provision to person or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by applicable law.

11. This Guaranty and the rights and obligations of the parties hereto are governed by the laws of the State of Florida.

12. The execution of this Guaranty prior to the execution of the Lease shall not invalidate this Guaranty or lessen the obligations of the Guarantor(s) hereunder. Time is of the essence of this Guaranty.

13. LEASING COMPANY AND THE UNDERSIGNED HEREBY MUTUALLY WAIVE ANY AND ALL RIGHTS WHICH EITHER MAY HAVE TO REQUEST A JURY TRIAL IN ANY PROCEEDING AT LAW OR IN EQUITY IN ANY COURT OF COMPETENT JURISDICTION WHICH PROCEEDING IS UNDER, IN CONNECTION WITH OR RELATED TO THIS GUARANTY. THE UNDERSIGNED ACKNOWLEDGES THET THE WAIVER IS A MATERIAL INDUCEMENT TO LEASING COMPANY TO ENTER INTO THE LEASE.

IN WITNESS WHEREOF, the undersigned have executed this Guaranty on the day of_____.

| Witnesses (as to Guarantor 1): | GUARANTOR 1: |
|---|---|
| Signature: _____ | |
| Print Name: Cindy Hoover | Guillermo W Baca |
| | Signature: _____ |
| Signature: _____ | SSN: _____ |
| Print Name: Taffy Mandiago | DL#: _____ |
| | Address: 5811 Midway PK Blvd NE |
| | Albuquerque NM 87109 |



TRAILPODS ACCEPTANCE CORPORATION   786.242.6800

AB/AB 11/4/14

Personal Guaranty 2

THIS GUARANTY AGREEMENT, made and executed by Katherine Baca, a resident of the State of New Mexico, (individually and collectively, hereinafter called the "Guarantor");

WITNESSETH:

WHEREAS, **MOONEY MOVERS INC.** a State of New Mexico corporation ("Lessee"), and TrailPods Acceptance Corporation, a Florida corporation (the "Leasing Company") have entered into a certain Equipment Lease Agreement, dated as of November ___, 2014 (the "Lease"); and

WHEREAS, in order to induce the Leasing Company to enter into the Lease, the undersigned Guarantor has agreed to guaranty the payment of all rents and charges, and the performance of all of Lessee's obligations, under the Lease. Guarantor has also agreed to assign bank letter of credit for the benefit of the Leasing Company.

NOW, THEREFORE, in consideration of the execution and delivery of the Lease by the Leasing Company, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Guarantor hereby agrees as follows:

1. The undersigned, jointly and severally, guarantee to the Leasing Company the due and punctual payment of all rent payable under the Lease, and each and every installment thereof, as well as the full and prompt and complete performance by the Lessee of each and all of the covenants, conditions and provisions in the Lease contained on the part of the Lessee therein to be kept, observed and performed, for the full term of the Lease and any extension thereof, with no less force and effect than if the undersigned were named as the Lessee in the Lease, and the undersigned, jointly and severally, will forthwith on demand pay all amounts at any time in arrears, and will make good any and all defaults occurring under the Lease.

2. This Guaranty shall be absolute, and continuing, and the Leasing Company shall not be required to take any proceeding against the Lessee, or give any notice to the Guarantor, before the Leasing Company has the right to demand payment and performance by the Guarantor upon default by the Lessee. This Guaranty and the liability of the Guarantor hereunder shall in no way be impaired or affected by any assignment which may be made of the Lease. The obligations hereunder are joint and several and are independent of the obligations of Lessee, and a separate action may be brought and prosecuted against any or all Guarantors whether action is brought against Lessee or any other Guarantor or whether Lessee is joined in any such action or actions, or whether Leasing Company has proceeded against or exhausted security pledged as collateral for any obligations under the Lease.

3. Guarantor authorizes Leasing Company, without notice or demand and without affecting Guarantor's liability hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the Lease or any part thereon; (b) take and hold security for the payment of this Guaranty or the obligations guaranteed, and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Leasing Company, in its discretion, may determine; and (d) release or substitute any of the endorsers, sureties or guarantors.

4. Guarantor waives any right to require Leasing Company to (a) proceed against Lessee to recover the rent or any other amounts due under the Lease; (b) proceed against or exhaust any security held from Lessee; or (c) pursue any other remedy in Leasing Company's power whatsoever. Until all rent and all other amounts due under the Lease to Leasing Company shall have been paid in full, Guarantor shall have no right of subrogation, and waives any right to enforce any remedy which Leasing Company now has or may hereafter have against Lessee, and waives any benefit of, and any right to participate in any security now or hereafter held by Leasing Company. Guarantor waives all presentment, demands for performance, notices of non-performance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guaranty.

5. No action or proceeding brought or institute under this Guaranty against the undersigned, and no recovery had in pursuance thereof, shall be a bar or defense to any further action or proceeding which may be brought under this Guaranty by reason of any other default or defaults of Lessee.

6. The liability of the Guarantor shall not be deemed to be waived, released, discharged, impaired or affected by reason of the release or discharge of the Lessee including, but not limited to, any release or discharge pursuant to any reorganization, readjustment, insolvency, receivership or bankruptcy proceedings.

7. There shall be no modification of the provisions of this Guaranty unless in writing and signed by the Guarantor and the Leasing Company.

Page 12



TRAILPODS ACCEPTANCE CORPORATION   786.242.6800

Exhibit "4"

JB / KB 11/4/14

14596

8. All of the terms, agreements and conditions of this Guaranty shall be joint and several, and shall extend to and be binding upon the Guarantor, their heirs, executors, administrators, and assigns, and shall inure to the benefit of the Leasing Company, its successors and assigns. Leasing Company may, without notice, assign this Guaranty in whole or in part.

9. If either party hereto brings any action to enforce rights under this Guaranty, whether judicial, administrative or otherwise, the prevailing party in that action that be entitled to recover from the losing party all fees and court costs incurred, including reasonable attorney's fees for port judgment proceedings, whether such costs and fees are incurred out of court, at trial, on appeal, or in any bankruptcy proceeding.

10. If any term of provision of this Guaranty, or the application thereof to any person or circumstance, shall, to any extend, be invalid or unenforceable, the remainder of the Guaranty, or the application of such term or provision to person or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by applicable law.

11. This Guaranty and the rights and obligations of the parties hereto are governed by the laws of the State of Florida.

12. The execution of this Guaranty prior to the execution of the Lease shall not invalidate this Guaranty or lessen the obligations of the Guarantor(s) hereunder. Time is of the essence of this Guaranty.

13. LEASING COMPANY AND THE UNDERSIGNED HEREBY MUTUALLY WAIVE ANY AND ALL RIGHTS WHICH EITHER MAY HAVE TO REQUEST A JURY TRIAL IN ANY PROCEEDING AT LAW OR IN EQUITY IN ANY COURT OF COMPETENT JURISDICTION WHICH PROCEEDING IS UNDER, IN CONNECTION WITH OR RELATED TO THIS GUARANTY. THE UNDERSIGNED ACKNOWLEDGES THET THE WAIVER IS A MATERIAL INDUCEMENT TO LEASING COMPANY TO ENTER INTO THE LEASE.

IN WITNESS WHEREOF, the undersigned have executed this Guaranty on the day of_____.

| Witnesses (as to Guarantor 1): | GUARANTOR 2: |
|---|---|
| Signature: _Cindy Hoover_ | Katherine Baca |
| Print Name: Cindy Hoover | Signature: _Katherine Baca_ |
| Signature: _____ | SSN: _____ |
| Print Name: _____ | DL#: _____ |
| | Address: 5811 Midway PK Blvd NE Albuquerque NM 87109 |

Page 13



TRAILPODS ACCEPTANCE CORPORATION   786.242.6800

